* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives or amend the Opinion and Award. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and there is no question as to misjoinder or nonjoinder of the parties.
2. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On all relevant dates, an employment relationship existed between plaintiff-employee and defendant-employer.
4. On all relevant dates, The PMA Insurance Group was the carrier on the risk for defendant-employer.
5. At and subsequent to the hearing, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet of Miscellaneous Stipulated Documents, which was admitted into the record, and marked as Stipulated Exhibit (3), and
 c. A Packet of Discovery Related Documents, which was admitted into the record, and marked as Stipulated Exhibit (4).
6. The issues to be determined as outlined by the parties are as follows:
 a. Whether plaintiff sustained a hernia as a result of a specific traumatic incident arising out of and in the course of his employment with defendant-employer on or about September 26, 2003, and if so, to what benefits, if any, is he entitled;
 b. Whether plaintiff's condition was caused by an intervening and/or superseding cause, such as a pre-existing condition or an unknown cause;
 c. Whether plaintiff's hernia was a significant contributing factor in preventing him from performing his regular duties of employment with defendant-employer on and after March 6, 2004;
 d. Whether plaintiff sustained complications from the surgical repair procedure related to a compensable hernia and if so, to what benefits, if any, is he entitled; and
 e. Whether defendants are entitled to credits/offsets against any potential award by the Industrial Commission.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing date, plaintiff was forty-six years of age. Plaintiff is a high school graduate, who had completed a technical course in refrigeration. Plaintiff also served in the United States Army where he performed field artillery duties before being honorably discharged.
2. Defendant-employer hired plaintiff on August 2, 1999, as a maintenance technician. In that capacity, plaintiff's duties included performing maintenance for a large apartment complex, Pinnacle Ridge Apartments, located in Asheville, North Carolina. In the performance of his duties, plaintiff was required to install and repair various appliances such as refrigerators, stoves, hot water heaters, hood vents, air conditioners, heating units, garbage disposals and furnaces. Plaintiff also worked on plaster walls, installed counter tops, and performed plumbing, electrical and miscellaneous carpentry work.
3. Plaintiff testified that on September 26, 2003, he arrived at work at approximately 7:45 a.m. and met with Ms. Kelly Spalding, Marketing Manager for defendant-employer, to obtain his work orders for the day. The work orders included the installation of three refrigerators that were being stored in defendant-employer's maintenance shop. Plaintiff and a coworker, Mr. Johnson, then began to perform the necessary tasks to complete the work orders. Each refrigerator was first placed on the bed of a pickup truck and driven to the apartment building for delivery and installation. The first refrigerator was delivered and installed without incident. The second refrigerator was placed on the truck, driven to Building E at the complex, unloaded, and prepared for delivery to a second floor apartment. Due to a narrow stairwell, the refrigerator could not be transported to the second story by use of a hand truck so plaintiff and Mr. Johnson, manually lifted the refrigerator and proceeded up the stairs. On the way upstairs with the refrigerator, plaintiff experienced a burning pain in his right groin area. Plaintiff testified that his lower abdominal pain persisted during the remainder of the workday, but that he was able to complete his tasks. Plaintiff further testified that he informed Mr. Johnson that he believed he had torn or ruptured something in his groin.
4. At the hearing before the Deputy Commissioner, Mr. Johnson testified that he could not specifically remember the number of refrigerators that he and plaintiff moved on September 26, 2003; however, at one point, one of the refrigerators slipped. At that point, Mr. Johnson asked plaintiff if he was okay because plaintiff had bent over as if he were hurt. Mr. Johnson testified that plaintiff told him that he was fine.
5. At the hearing before the Deputy Commissioner, plaintiff testified that although he had pain in the groin at the time of the lifting of the refrigerator, he continued to work because he had become accustomed to pain, had learned to ignore it and wanted to get his job done. The Full Commission finds plaintiff's reason for continuing to work to be credible.
6. After completing the work orders, plaintiff returned to the maintenance shop to store his tools and then went to the defendant-employer's office. Upon arriving at the office, plaintiff testified that he informed Ms. Spalding that he thought he had "ruptured" himself. According to plaintiff, Ms. Spalding inquired as to whether he wanted to file a written report, to which plaintiff replied affirmatively. Plaintiff contends that Ms. Spaulding then suggested that he wait until Ms. Cindy Hart, the office manager, returned from leave to complete the incident report. Plaintiff consented to Ms. Spaulding's suggestion.
7. The week following the incident in question, plaintiff was on vacation during which time he went ginseng hunting, a process that plaintiff described as being simple, requiring only minimal physical exertion. Upon returning to work on October 6, 2003, plaintiff reported his injury to Ms. Hart, and requested that she complete the necessary workers' compensation forms. Thereafter, Ms. Hart completed an Industrial Commission Form 19 Employer's Report of Injury on which she recorded, "employee states he was moving new refrigerator with another employee and pulled right side." The Form 19 also lists the injury sustained as being a hernia. When plaintiff inquired about medical treatment, it was suggested that he seek attention at the Veterans Administration Medical Center ("VA") and Ms. Hart gave plaintiff a Physician Treatment/Work Status Report to be completed by a physician.
8. Regarding plaintiff's account of reporting his injury, Ms. Spalding testified at the hearing before the Deputy Commission that she and Ms. Michelle Palmer were working in defendant-employer's office on September 26, 2003, and that plaintiff did not report an injury or incident to her. Similarly, Ms. Palmer testified that she did not hear plaintiff report any type of injury on the date in question. Ms. Spalding further testified that it was not until October 6, 2003, that she first learned that plaintiff had injured himself at work on September 26, 2003. However, Ms. Spaulding also testified that plaintiff performed his job well, carried out all directions and to her knowledge, had never lied to her in his capacity as an employee.
9. Based upon the totality of the credible evidence of record, the Full Commission gives greater weight to the testimony of plaintiff regarding the circumstances and reporting of his injury on September 26, 2003, as opposed to that of Mr. Johnson, Ms. Spaulding and Ms. Palmer. This finding is in part based upon the fact that plaintiff's testimony is corroborated by the histories outlined in his medical records and the fact that plaintiff was found to be a good employee.
10. The Full Commission finds that despite any discrepancy in the testimony, defendants have failed to show they were prejudiced in their claim investigation or in any other manner regarding the claim as the testimony indicates that the latest date that defendants had actual knowledge of plaintiff's injury was October 6, 2003, less than two weeks after the incident.
11. Plaintiff was unable to obtain an appointment at the VA on October 6, 2003, but was examined by Dr. Scott Cassidy, a primary care physician at that facility on October 7, 2003. Dr. Cassidy completed the Physician Treatment/Work Status Report form and noted on the form that plaintiff had been injured on September 26, 2003, and that his diagnosis was right inguinal hernia, right inguinal ligament strain. Additionally, Dr. Cassidy restricted plaintiff's activities to lifting no more than 20 pounds, along with restricting his bending, stooping, twisting, pushing, pulling, and climbing and referred plaintiff for an evaluation by a general surgeon. Thereafter, plaintiff delivered the completed physician form to Ms. Hart.
12. Plaintiff's surgical consultation was then scheduled for November 14, 2003. However, prior to this consultation, plaintiff suffered a stroke and was admitted to the VA on November 7, 2003. Plaintiff remained in the hospital on this occasion until November 12, 2003, when Dr. Vyas Snehal, a staff physician at the VA, discharged him. Dr. Snehal had also evaluated plaintiff for his hernia and noted in her records that plaintiff had been referred for an evaluation of a right inguinal mass, which occurred after lifting a refrigerator at work.
13. After being discharged from the VA, the scheduling of plaintiff's hernia surgery was delayed due to complications and medications related to his stroke and cardiovascular problems. Plaintiff's cardiovascular problems required implantation of a cardio-defibrillator on March 16, 2004. Thereafter, plaintiff's condition improved and it was determined that he could proceed with his hernia surgery. Records from the VA dated November 16, 2004, note that plaintiff's right inguinal hernia had been progressively symptomatic for over a year. Plaintiff's surgery was then performed on January 18, 2005, following a period of five days in which plaintiff did not take Coumadin, a blood thinning prescription medication prescribed following his stroke. Dr. John Li, Chief of General Surgery at the VA, performed this surgical procedure, with Dr. Denise Chang, a resident at Duke, assisting.
14. Regarding the date of plaintiff's injury, Dr. Cassidy testified that his typed medical note of October 7, 2003, was inconsistent with his hand written Physician Treatment/Work Status Report that he had completed. Dr. Cassidy explained that he had recorded the wrong date for the injury when he typed his treatment note after examining plaintiff and verified that the date of the injury recorded on the Work Status Report was the correct date.
15. Dr. Cassidy continued to monitor plaintiff's condition through the time of his stroke in November 2003 and eventual hernia surgery. Dr. Cassidy has testified that he was aware that plaintiff had been prescribed Coumadin following his November 2003 stroke and that the hernia surgery had been delayed due to the risk of bleeding associated with Coumadin. Dr. Cassidy further testified that he was aware that plaintiff's Coumadin had been discontinued prior to his January 18, 2005, surgery due to this same risk.
16. On January 20, 2005, plaintiff was readmitted to the VA's emergency department with complaints of swelling and pain in the scrotum, as well as a temporal bi-lateral headache and changes with his eyesight. After admission, he was transferred to medical service for heparin therapy pending his Coumadin levels becoming therapeutic. Ultimately, physicians determined that plaintiff had experienced another stroke following his hernia surgery due to having ended the taking of his blood thinning Coumadin. Subsequent to being released from the hospital, plaintiff remained under the care of Dr. Cassidy and has also been treated by Dr. Fernando Sanchez, an internal medicine specialist at the VA, for his ongoing cardiomyopathy.
17. Dr. Cassidy opined, and the Full Commission finds that plaintiff's hernia resulted from the refrigerator lifting incident that occurred while working for defendant-employer on September 26, 2003, when he developed a sharp burning type pain in his right lower abdomen while moving a refrigerator on a stairwell.
18. Dr. Cassidy also testified that he assigned lifting restrictions to plaintiff on October 7, 2003, because he was concerned about the possible entrapment of his hernia. Dr. Cassidy stated that this lifting restriction would have applied until such time as the hernia had been repaired and Dr. Li released plaintiff. According to Dr. Cassidy's testimony, the lack of Coumadin for a period of five days prior to plaintiff's hernia surgery could have caused plaintiff's headache and vision problems for which he was seen in the emergency room on January 20, 2005.
19. Dr. Li is a board certified general surgeon who treated plaintiff for his hernia at the VA along with Dr. Chang, a surgical resident at Duke University who was training at the VA. Dr. Li testified that he and Dr. Chang examined plaintiff prior to his surgery and found that he had an inguinal hernia. Dr. Li was of the opinion that plaintiff's hernia was caused by lifting the refrigerator at work on September 26, 2003. Additionally, Dr. Li has opined that plaintiff would have been limited from heavy lifting prior to undergoing his hernia repair, but that plaintiff would have no lifting restrictions after a post-operative four-week healing period. At the time of plaintiff's January 18, 2005, hernia surgery, Dr. Li opined that plaintiff's pre-existing cardiovascular problems had stabilized.
20. Regarding plaintiff's stroke after his hernia surgery, Dr. Cassidy opined and the Full Commission finds that this cardiovascular incident was the result of the discontinuation of Coumadin prior to the surgery. Further, he opined that the cessation of the Coumadin at least five days in advance of hernia surgery was necessary for plaintiff.
21. Dr. Fernando Sanchez, who is a board certified specialist in internal medicine, also testified regarding plaintiff's cardiovascular incident that occurred after his hernia surgery. Dr. Sanchez initially treated plaintiff during the period of January 20, 2005, through January 24, 2005, the time plaintiff was hospitalized at the VA hospital. Dr. Sanchez has testified that at the time of plaintiff's hospital admission on January 20, 2005, plaintiff had sub-therapeutic blood levels of Coumadin. A CT scan revealed a left occipital lobe infarct and Dr. Sanchez opined that plaintiff was experiencing an ischemic stroke that results from an occlusion of the arteries that supply blood to the brain. As a result of these findings Dr. Sanchez placed plaintiff on Aspirin and Enoxaparin, a rapid acting blood thinner. Dr. Sanchez clarified that the stroke plaintiff experienced in January 2005 was in a different area of his brain than the stroke of November 2003.
22. Dr. Sanchez opined that the discontinuation of Coumadin prior to plaintiff's hernia surgery placed plaintiff at high risk of experiencing a cardiovascular event.
23. Dr. Sanchez opined that plaintiff's sub-therapeutic levels of Coumadin in January 2005 could have contributed to the stroke for which he treated plaintiff. As for plaintiff's future prognosis, Dr. Sanchez did not expect plaintiff's visual problems caused by the January 2005 stroke to improve. Dr. Sanchez discharged plaintiff on January 24, 2005, to physical activity as tolerated and noted that plaintiff would probably require Coumadin for the remainder of his life.
24. Based on the competent evidence of record, the Full Commission finds that on September 26, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer resulting in the sudden and immediate development of a right inguinal hernia that did not exist prior to this accident.
25. The Full Commission also finds that as a direct and natural result of and causally related to his September 26, 2003, hernia and necessary surgical repair on January 18, 2005; plaintiff suffered a stroke on January 20, 2005. This January 2005 stroke caused vision loss and brain damage that is likely permanent.
26. As a direct and proximate result of his September 26, 2003, hernia; his January 18, 2005, surgery; and his January 20, 2005, stroke; the Full Commission finds that plaintiff has been unable to earn any wages in his former position with defendant-employer or in any other employment for the period of October 7, 2003, through the present and continuing.
27. On September 26, 2003, plaintiff's average weekly wage was $540.00, which yields a compensation rate of $360.18.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 26, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer resulting in the sudden and immediate development of a right inguinal hernia, which did not exist prior to that date. N.C. Gen. Stat. § 97-2(18).
2. As the direct and natural result of and causally related to his September 26, 2003, hernia and necessary surgical repair on January 18, 2005, plaintiff suffered a stroke on January 20, 2005, that has caused vision loss and brain damage that is likely permanent. N.C. Gen. Stat. §§ 97-2(18) and 97-2(6).
3. As a direct and proximate result of his September 26, 2003, hernia; his January 18, 2005, surgery; and his January 20, 2005, stroke; plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $360.18 per week for the period of October 7, 2003, through the present and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. As a direct and proximate result of his September 26, 2003, hernia; his January 18, 2005, surgery; and his January 20, 2005, stroke; plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred including expenses related to his care at the Veterans Administration and for ongoing Coumadin therapy as recommended and as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-25 and 97-25.1.
5. Although there were discrepancies in the testimony regarding the reporting of plaintiff's injury, defendants were not prejudiced in their investigation or in any other manner as defendants acknowledged receiving notice on October 6, 2003, less than two weeks after the incident. N.C. Gen. Stat. § 97-22.
 * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff ongoing total disability compensation at the rate of $360.18 per week for the period of October 7, 2003, through the present and continuing until further Order of the Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his September 26, 2003, hernia; his January 18, 2005, surgery; and his January 20, 2005, stroke; including expenses related to his care at the Veterans Administration and for ongoing Coumadin therapy as recommended by his attending physician.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for plaintiff's counsel. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel receiving every fourth check thereafter.
4. Defendants shall pay the costs.
This the __ day of September 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER